UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SONJIA RANAE McCLURE,

                Plaintiff,        Civil Action No. 13-12599
                                      Honorable Sean F. Cox
                                      Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [10, 15]**

      Plaintiff Sonjia Ranae McClure ("McClure") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [10, 15], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.**       **RECOMMENDATION**

      For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that McClure is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [15] be DENIED, McClure's Motion for Summary Judgment [10] be GRANTED IN PART to the extent it seeks remand and DENIED IN PART to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. §405(g), this case be REMANDED to the ALJ for further proceedings consistent with this Recommendation.

**II.     REPORT**

    **A.     Procedural History**

On March 17, 2011, McClure filed an application for SSI, alleging a disability onset date of August 1, 2010. (Tr. 161-66). This application was denied initially on August 5, 2011. (Tr. 74-77). McClure filed a timely request for an administrative hearing, which was held on April 19, 2012, before ALJ Earl Witten. (Tr. 24-58). McClure, who was represented by attorney James Cyphers, testified at the hearing, as did vocational expert Toni McFarland. (*Id.*). On June 26, 2012, the ALJ issued a written decision finding that McClure is not disabled. (Tr. 9-19). On April 19, 2013, the Appeals Council denied review. (Tr. 1-3). McClure filed for judicial review of the final decision on June 13, 2013. (Doc. #1).

    **B.     Background**

        *1.     McClure's Disability Reports and Testimony*

At the time of the administrative hearing, McClure was 22 years old. (Tr. 29). She testified that she was not married, had no children, and was basically homeless (living "house to house"). (Tr. 29-30). She graduated from high school and took some college classes, but eventually dropped out "due to homelessness." (Tr. 30).

McClure indicated that her ability to work is limited by major depressive disorder, general anxiety disorder, mood swings, and chronic back pain. (Tr. 33-34, 181). She testified that she has suicidal thoughts and had attempted suicide three times by cutting her wrists. (Tr. 34-38). McClure further testified that, because of her back pain and depression, she stays in bed all day three or four days a week. (Tr. 38-39). She experiences night terrors as a result of being beaten by her parents in the past, and sometimes her anxiety attacks are so severe that she will "puke for hours." (Tr. 40, 42). She takes several medications for her anxiety and depression, including Celexa, Seroquel, Neurontin, and Klonopin. (Tr. 40-41). In addition, she has "rotary

2

scoliosis," which makes it difficult for her to breathe, walk, and to sit or stand in one position without pain. (Tr. 33, 43).

She testified that, in the past, she had a part-time, work-study job at Jackson Community College, which required her to work twice a week for five hours at a time. (Tr. 30-31). However, she ultimately stopped working in this job in January of 2011 because "they said that [she] was unstable." (Tr. 32, 181). In response to questioning by her attorney, McClure testified that she could not work an eight-hour day, five days a week, because it takes her "from 10:00 to 1:00 to even get around currently." (Tr. 47).

    2.    *Medical Evidence*

On July 7, 2010, McClure presented to Michelle Brewer, D.O. of Allegiance Health, complaining of low back pain. (Tr. 220-21). McClure indicated that she had experienced back pain for about five years, and she believed it was because of her large breasts. (Tr. 220). McClure further indicated that her back pain was causing depression, and she was seeing a school counselor on a weekly basis. (*Id.*). Dr. Brewer noted that x-rays of McClure's lumbar spine taken on November 4, 2009, were normal. (*Id.*). She encouraged McClure to try some aquatic classes. (Tr. 221). At a follow-up visit in August of 2010, McClure indicated that she had been "in bed for three days because her back pain had been so bad." (Tr. 222). Although McClure's physical examination was largely normal, Dr. Brewer ordered an MRI of McClure's lumbar spine, which demonstrated a mild degree of levoscoliosis of the mid lumbar spine and mild degenerative facet changes at L4-L5 and L5-S1, with no other lumbar disc herniation or central canal stenosis. (Tr. 222-24, 232). McClure returned to see Dr. Brewer a handful of other times through January of 2011, indicating that her pain remained fairly consistent. (Tr. 224-31). At her last examination, McClure's gait and station were normal; her range of motion was

normal (but reproduced her pain in the midthoracic and lumbar area); and she had tenderness in the periscapular area and the lower lumbar paraspinals. (Tr. 230).

On February 15, 2011, McClure presented to the Center for Family Health, complaining of back pain and depression. (Tr. 243-45). She indicated that her back pain started two years earlier, and it was worsening. (Tr. 243). In addition, McClure reported experiencing anxious thoughts, depressed mood, panic attacks, and poor concentration. (*Id.*). Her back pain medications – Amitriptyline and Lidocoae – were refilled, and she was prescribed Celexa for depression. (Tr. 244).

In a letter dated February 23, 2011, Samy Wassef, M.D., of Allegiance Health, stated that McClure was under his care for depression and anxiety. (Tr. 387). He further indicated that McClure's symptoms had "frustrated her over the past year, depending on her stressors. Many factors have contributed to her stressors, particularly her back pain which has limited her physically and emotionally causing academic struggles, job loss and changes in her living environment." (*Id.*).

Dr. Wassef also completed a Medical Source Statement on May 15, 2011, indicating that McClure had treated with him for generalized anxiety disorder since May of 2009. (Tr. 247-52). He assigned McClure a Global Assessment of Functioning[1] ("GAF") score of 40 and characterized her prognosis as "guarded." (Tr. 247). He indicated that McClure's back pain limited her ability to sustain concentration and that she would be "seriously limited, but not precluded" in maintaining attention for a two-hour segment, completing a normal workday or workweek without interruptions from psychological symptoms, accepting instructions and

---

[1] GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009).

responding appropriately to criticism from supervisors, and carrying out detailed instructions. (Tr. 249). As to McClure's functional limitations, Dr. Wassef opined that she was moderately limited in activities of daily living; moderately limited in maintaining social functioning; and markedly limited in maintaining concentration, persistence, or pace. (Tr. 250). Dr. Wassef also opined that McClure had experienced more than three episodes of decompensation within the preceding twelve-month period, each of at least two weeks' duration, saying that she "becomes very depressed with isolation for weeks." (*Id.*). In addition, Dr. Wassef opined that McClure's impairments would cause her to be absent from work about four days per month. (Tr. 251).

On August 2, 2011, McClure underwent a consultative psychological examination with Kimberly Lem, MA, supervised by William Brooks, Ed.D. (Tr. 253-59). Ms. Lem noted that, throughout her interview, McClure described a depressed mood, low energy, low motivation, insomnia, and emotional pain. (Tr. 253). She was "clearly very self-focused and focused on her difficulties," but her affect was normal and she smiled often. (*Id.*). Ms. Lem observed that, throughout her interview, McClure appeared to be generally intact with reality, but her self-esteem appeared to be low. (Tr. 255). Her motor activity was within normal limits, and she was pleasant, cooperative, and polite. (*Id.*). Ms. Lem noted that McClure "appeared to have minimal motivation and very limited insight into her situation." (Tr. 255-56). Her pressure of speech was within normal limits, and her responses, "although quite melodramatic, were generally well organized." (Tr. 256). McClure could repeat five numbers forward and four numbers backward and recall three out of three objects after three minutes, but she could not perform serial 7's. (Tr. 256-57). Ms. Lem diagnosed McClure with major depressive disorder, recurrent, moderate and anxiety disorder, not otherwise specified. (Tr. 258). She assigned McClure a GAF score of 50 and characterized her prognosis as "fair to guarded, depending upon intervention." (*Id.*). In

conclusion, Ms. Lem stated:

> Ms. McClure was pleasant, cooperative, maintained good eye contact and was interactive. She appeared to be able to be appropriately sociable. She appeared to be capable of managing simple and repetitive tasks. However, she may have difficulties with detailed and complex tasks, especially on a long term or sustained basis. Furthermore, she appeared to be quite sensitive to stress and would likely not respond to common stressors effectively. (*Id.*).

Linda Brundage, Ed.D., reviewed McClure's records for the state disability determination service and completed a mental RFC assessment and Psychiatric Review Technique on August 4, 2011. (Tr. 59-70). Dr. Brundage opined that McClure has a moderate restriction in her activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no extended episodes of decompensation. (Tr. 64). Dr. Brundage concluded as follows: "Claimant is able to do unskilled work. May have moderate limitations in concentration and social interaction secondary to Depressive Disorder and Anxiety disorder. Retains the capacity to sustain simple repetitive work." (Tr. 68).

On August 28, 2011, McClure was taken to an emergency room for a mental evaluation. (Tr. 321). She indicated that she had chronic anxiety and depression and said "that she sometimes feel[s] she would be better off dead but she does not want to kill herself." (*Id.*). She was oriented to time, person, and place, and was depressed and tearful but acting appropriately. (Tr. 321-22).

McClure returned to the Center for Family Health in July and November of 2011, and in February, March, and May of 2012. (Tr. 389-402, 406-12). On each occasion, it was noted that she was in no apparent distress and was alert and oriented.[2] (Tr. 390, 394, 397, 401, 407, 411).

---

[2] At some point during this time frame, it appears that McClure also sought treatment at LifeWays Community Mental Health. A discharge summary contained in the record indicates that McClure was admitted to the LifeWays program on September 30, 2011, and was discharged on November 10, 2011, so that she could be transitioned to her primary care

6

However, McClure reported that she had begun vomiting chronically, which medical providers noted seemed "related to her anxiety." (Tr. 389, 399).

On March 8, 2012, McClure presented to Allegiance Health's emergency room complaining of depression. (Tr. 297-303). The next day, she was admitted to a psychiatric partial hospitalization program (apparently for the second time), where she reported suffering from ongoing depression and having suicidal thoughts. (Tr. 290-93). She reported having been sexually assaulted in November of 2011 and indicated that she has urges to cut herself. (Tr. 290-91). On examination, McClure was alert and fully oriented; her memory and concentration appeared to be within normal limits; and she showed adequate insight and judgment. (Tr. 292). Dr. Wassef diagnosed her with mood disorder, assigned her a GAF score of 35, and recommended further treatment. (*Id.*). On April 23, 2012, Dr. Wassef wrote, in a two-line letter, "Sonjia McClure has been under my care since May 2009. It is my opinion that Ms. McClure is unable to work at this time." (Tr. 388).

### 3. *Vocational Expert's Testimony*

Toni McFarland testified as an independent vocational expert ("VE") at the administrative hearing before the ALJ. (Tr. 50-51, 54-56). First, the VE testified that McClure's part-time employment in a work-study position would not constitute past relevant work under the Act. (Tr. 54). Then, the ALJ asked the VE to imagine a claimant of McClure's age, education, and work experience, who could perform sedentary work, with the following additional restrictions: no overhead work; no use of foot controls; only occasional bending, twisting, and turning; no climbing, crawling, squatting, or kneeling; no use of air or vibrating tools; no work around dangerous machinery or at heights; an option to sit/stand at will; only simple, repetitive

---

physician. (Tr. 262). On discharge, McClure's diagnosis was major depressive disorder, recurrent, moderate, and her GAF score was 60. (Tr. 264).

7

tasks with an SVP$^3$ of 1 or 2; only occasional contact with co-workers; and no contact with the public. (*Id.*). The VE testified that the hypothetical individual would be capable of working as a document preparer (3,000 jobs in Michigan's lower peninsula), addresser (1,000 jobs), or as a small production worker (2,000 jobs). (Tr. 54-55).

### C. Framework for Disability Determinations

Under the Act, SSI is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" in relevant part as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past

---

$^3$ The Dictionary of Occupational Titles (DOT) lists a specific vocational preparation (SVP) time for each described occupation. For instance, using the skill level definitions in 20 C.F.R. §404.1568 and §416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9. *See Soc. Sec. Rul.* 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000).

>   relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### D.     The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that McClure is not disabled under the Act. At Step One, the ALJ found that McClure has not engaged in substantial gainful activity since March 17, 2011, the application date. (Tr. 11). At Step Two, the ALJ found that McClure has the severe impairments of scoliosis, depression, and anxiety. (Tr. 11-15). At Step Three, the ALJ found that McClure's impairments do not meet or medically equal a listed impairment. (Tr. 15).

The ALJ then assessed McClure's residual functional capacity ("RFC"), concluding that she is capable of performing sedentary work, with the following additional restrictions: no overhead work; no use of foot controls; only occasional bending, twisting, and turning; no climbing, crawling, squatting, or kneeling; no use of air or vibrating tools; no work around dangerous machinery or at heights; an option to sit/stand at will; only simple, repetitive tasks with an SVP of 1 or 2; only occasional contact with co-workers; and no contact with the public. (Tr. 15-17).

At Step Four, the ALJ determined that McClure has no past relevant work. (Tr. 17). At Step Five, the ALJ concluded, based in part on the VE's testimony, that McClure is capable of

performing a significant number of jobs that exist in the national economy. (Tr. 18). As a result, the ALJ concluded that McClure is not disabled under the Act. (Tr. 18-19).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may

look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

    **F.**    **Analysis**

As set forth above, McClure's treating physician, Dr. Samy Wassef, issued two medical opinions in this case. First, in May of 2011, Dr. Wassef completed a Medical Source Statement, in which he opined that McClure was moderately limited in activities of daily living; moderately limited in maintaining social functioning; markedly limited in maintaining concentration, persistence, or pace; and had experienced more than three episodes of decompensation in the preceding twelve-month period. (Tr. 250). In addition, Dr. Wassef opined that McClure's impairments would cause her to be absent from work about four days per month. (Tr. 251). Subsequently, in April of 2012, Dr. Wassef opined that McClure was unable to work at that time. (Tr. 388). In concluding that McClure can perform a reduced range of sedentary work, the ALJ apparently declined to give controlling weight to either of these opinions. (Tr. 15-17). In her motion for summary judgment, McClure argues that this was reversible error.

An ALJ "'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques'

and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). If the ALJ declines to give a treating physician's opinion controlling weight, he must document how much weight he gives it, "considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley*, 581 F.3d at 406 (citing *Wilson*, 378 F.3d at 544); *see also* 20 C.F.R. §416.927(c). In addition, and particularly relevant here, the treating source rule contains a procedural, explanatory requirement that an ALJ give "good reasons" for the weight given a treating source opinion. *See Wilson v. Comm'r of Soc. Sec.*, 2012 WL 6737766, at *8 (E.D. Mich. Nov. 19, 2012); *Soc. Sec. Rul.* 96-2p, 1996 WL 374188, at *5 (July 2, 1996) (providing that a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record"). As the Sixth Circuit explained, the purpose of this procedural requirement is two-fold:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

*Wilson*, 378 F.3d at 544 (internal quotations and citations omitted).

In this case, McClure points out that, with respect to the so-called "paragraph B" criteria of Listings 12.04 and 12.06,[4] Dr. Wassef opined in May of 2011 that McClure was moderately

---

[4] As the ALJ recognized, to satisfy the "paragraph B" criteria, a claimant's mental impairments

limited in activities of daily living; moderately limited in maintaining social functioning; markedly limited in maintaining concentration, persistence, or pace; and had experienced more than three episodes of decompensation within the preceding twelve-month period. (Tr. 250). Additionally, Dr. Wassef opined that McClure was "seriously limited" in maintaining attention for two-hour segments, completing a normal workday and workweek without interruptions from psychologically based symptoms, accepting instructions and responding appropriately to criticism from supervisors, and carrying out detailed instructions. (Tr. 249). Furthermore, Dr. Wassef opined that McClure's impairments would cause her to be absent from work about four times per month. (Tr. 251). McClure argues that the ALJ's failure to given "good reasons" for declining to give controlling weight to Dr. Wassef's May 2011 opinion constitutes reversible error. (Doc. #10 at 14-15).

In this case, there are multiple problems with the ALJ's consideration of Dr. Wassef's May 2011 opinion. As an initial matter, although Dr. Wassef is one of McClure's treating physicians, the ALJ never states that he is giving this opinion controlling weight; and, indeed, it certainly appears that he did not, as his findings are different than Dr. Wassef's in several critical respects. (Tr. 15, 250). Of course, as noted above, the ALJ need not give a treating physician's opinion controlling weight where it is not well-supported by the medical evidence or is inconsistent with the other substantial evidence. *See Blakley*, 581 F.3d at 406. Yet, in such circumstances, not only must the ALJ explain the weight he is giving it and why, but he must offer "good reasons" for his conclusions. Here, despite apparently declining to give controlling

---

must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. (Tr. 15 (citing 20 C.F.R. Part 404, Subpart P, Appendix 1)). Repeated episodes of decompensation, each of extended duration, means three episodes within one year, or an average of once every four months, each lasting for at least two weeks. (*Id.*).

13

weight to this opinion, the ALJ did not state what weight he was giving it, nor did he provide "good reasons" for discounting Dr. Wassef's conclusions.[5] *See* 20 C.F.R. §416.927(c)(2). This is simply insufficient, as it leaves McClure with no real understanding as to why the ALJ disagreed with her treating physician in these critical respects.

The ALJ's failure to provide "good reasons" for rejecting Dr. Wassef's May 2011 opinion is particularly problematic in this case, where he simultaneously relied on this same opinion in rejecting Dr. Wassef's April 2012 opinion that McClure was "unable to work." (Tr. 17). Specifically, whereas the ALJ implicitly rejected those portions of Dr. Wassef's opinion that *supported* McClure's allegations of disability (for example, his opinion that McClure suffered from "extreme" episodes of decompensation and would be absent from work about four days per month, *see infra*, fn. 7), he touted those portions of Wassef's opinion that were arguably *unfavorable* to McClure in concluding that her limitations were not work-preclusive (for example, Wassef's opinion that McClure had a "limited but satisfactory" ability to make simple work-related decisions). (Tr. 15, 17). The ALJ did all of this without providing any explanation whatsoever as to why he accepted only those conclusions of Dr. Wassef which supported a finding that McClure was not disabled, and rejected the ones which supported, or may even compel a finding that she is disabled.[6]

---

[5] For example, the ALJ clearly disagreed with Dr. Wassef's opinion that McClure had experienced more than three episodes of decompensation during the relevant time period, but he made no effort to explain the "one or two" episodes he found to have occurred, nor did he explain why he felt Dr. Wassef was incorrect in his assessment.

[6] It is no answer to say that the ALJ's decision "must be affirmed even if … substantial evidence also supports the opposite conclusion." *Cutlip*, 25 F.3d at 286. The ALJ's overall decision must be the product of a fair evaluation of the evidence. The point is illuminated by the ALJ's discussion and usage of Dr. Wassef's two 2011 and 2012 opinions. The ALJ rejected Dr. Wassef's 2012 opinion on the grounds that it was inconsistent with portions of his 2011 opinion. However, in doing so, the ALJ ignored the fact that the opinions were issued almost a full year apart from one another. More importantly, he ignored that the record contains significant

Because the ALJ at least arguably would have found McClure disabled at Step Three if he had given Dr. Wassef's May 2011 opinion controlling weight, the Court cannot find that the above errors are harmless. As McClure points out, Dr. Wassef opined in May of 2011 that she was *markedly* limited in maintaining concentration, persistence, or pace, and had experienced *more than three* episodes of decompensation.[7] (Doc. #10 at 14-15 (citing Tr. 250)). If the ALJ had credited Dr. Wassef's opinion in this regard, McClure would have satisfied the "paragraph B" criteria of Listings 12.04 and/or 12.06 and, thus, likely would have been found presumptively disabled at Step Three. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1; *supra*, fn. 4. In contrast, however, the ALJ found that McClure had only a *moderate* limitation in maintaining concentration, persistence, or pace, and had experienced only *one or two* episodes of decompensation. (Tr. 15). Accordingly, the ALJ concluded that McClure did not meet the requirements of the relevant Listings. (*Id.*).

The Commissioner argues that the ALJ was not required to give Dr. Wassef's opinion regarding the "paragraph B" criteria controlling weight because such an opinion concerns an issue reserved to the Commissioner. (Doc. #15 at 15-16 (citing *Soc. Sec. Rul.* 96-5p, 1996 WL

---

evidence that McClure's condition worsened in the eleven-month period between these two opinions. For example, McClure was sexually assaulted and attempted suicide twice during this period. (Tr. 11, 290-93). And, in March of 2012, McClure was diagnosed with a mood disorder, assigned a GAF score of 35, and admitted to a psychiatric partial hospitalization program. (Tr. 290-93, 298). While an ALJ is not required to "put stock" in a GAF score, *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2002), the ALJ erred by failing to address any of this evidence. In short, the ALJ discounted Dr. Wassef's 2012 opinion by selectively citing snippets of his 2011 medical source statement, while ignoring the substantial record evidence that supported his 2012 opinion. The ALJ was not required to give any special weight to Dr. Wassef's conclusion that McClure was disabled, 20 C.F.R. §404.1527(e)(1), (e)(3), but he could not simply ignore the record evidence that could support such a finding.

[7] Dr. Wassef also opined that McClure's impairments would cause her to be absent from work about four days per month. (Tr. 251). Although the ALJ mentioned this fact in connection with his Step Two analysis, he did not indicate how much weight he gave Dr. Wassef's opinion in this respect. Because such a limitation could certainly be work-preclusive, the ALJ should evaluate this aspect of Dr. Wassef's opinion on remand.

15

374183, at *3 (July 2, 1996) and 20 C.F.R. §416.927(d)). Again, even assuming this is true, the applicable regulations provide that an ALJ must "consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments …." 20 C.F.R. §416.927(d)(2). Here, the Court cannot say that the ALJ considered Dr. Wassef's opinion regarding the "paragraph B" criteria where the entirety of his "analysis" in this respect reads as follows:

> In activities of daily living, the claimant has mild restriction. In social functioning, the claimant has moderate difficulties. With regard to concentration, persistence or pace, the claimant has moderate difficulties. As for episodes of decompensation, the claimant has experienced one to two episodes of decompensation, each of extended duration. Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

(Tr. 15). In other words, in determining whether McClure meets the requirements of the relevant Listings, the ALJ made no mention of Dr. Wassef's opinion, despite the fact that his was the *only* treating source opinion in the record as to McClure's functional limitations. And, although the Commissioner now attempts to buttress the ALJ's "analysis" by pointing out that his conclusions were – for the most part – consistent with those of Dr. Brundage (the state disability examiner), the ALJ never even mentioned Dr. Brundage's findings in his decision.[8] In other words, then, in reaching his conclusion at Step Three of the sequential analysis, the ALJ did not even *mention* either of the two medical opinions regarding the "paragraph B" criteria. As a result, this Court cannot conclude that the ALJ's determination regarding the paragraph B criteria is supported by substantial evidence.

---

[8] Barring unusual circumstances not present here, it is improper for a reviewing court to rely on such post-hoc evidentiary rationalization by the Commissioner. *See Schroeder v. Comm'r of Soc. Sec.*, 2013 WL 1316748, at *13 (E.D. Mich. Mar. 1, 2013) (noting that "the Commissioner's *post hoc* rationalization is not an acceptable substitute for the ALJ's lack of rationale").

As the Sixth Circuit has stressed, it is incumbent upon the ALJ to assess what weight a treating source's opinion deserves and to specifically articulate that weight and the "good reasons" supporting it; when the ALJ fails to do so, remand is appropriate. *See, e.g.*, *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) (remanding when ALJ failed to assign a specific weight to a treating source's opinion or explain why part of that opinion was adopted while other parts were rejected because, "[w]hile it may be true that [the] opinion . . . should not ultimately be accorded controlling weight as to [claimant]'s RFC, the ALJ did not go through the required analysis to arrive at that conclusion"); *Sawdy v. Comm'r of Soc. Sec.*, 436 F. App'x 551, 553-54 (6th Cir. 2011) ("[W]hen an ALJ violates the treating-source rule, '[w]e do not hesitate to remand,' and 'we will continue remanding when we encounter opinions from ALJ[s] that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.'") (quoting *Hensley v. Astrue,* 573 F.3d 263, 267 (6th Cir. 2009)); *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (an ALJ's "failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record") (internal quotations omitted).

Given this case law, and all of the foregoing analysis, the Court concludes that the ALJ erred in failing to properly apply the treating physician rule. Without proper consideration of the opinions of McClure's treating physician, the ALJ's conclusion that McClure is not disabled is not supported by substantial evidence. As a result, the Court recommends remanding this matter to the ALJ for consideration of the matters discussed above.[9]

---

[9] McClure also argues that the ALJ erred in finding her allegations of disabling limitations less

### III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [15] be DENIED, McClure's Motion for Summary Judgment [10] be GRANTED IN PART to the extent it seeks remand and DENIED IN PART to the extent it seeks an award of benefits, and that this case be remanded to the ALJ for further proceedings consistent with this Recommendation.

Dated: May 29, 2014　　　　　　　　　　　　　s/David R. Grand
Ann Arbor, Michigan　　　　　　　　　　　　　DAVID R. GRAND
　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

### NOTICE

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

---

than fully credible. (Doc. #10 at 15-19). Because this Court concludes that the ALJ erred in his consideration of Dr. Wassef's opinion and in formulating McClure's RFC, and recommends remanding the case back to the ALJ for proper consideration of those matters, it need not address this additional issue.

**CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 29, 2014.

                                          s/Eddrey O. Butts
                                          EDDREY O. BUTTS
                                          Case Manager